## Application of Blake E. Irvin Post No. 525

*Alex S. Scribner*, for petitioner; *Walter E. Morris*, contra.

DARR, P. J., June 10, 1933.—The Treasurer of Jefferson County having refused to grant applications for beverage licenses to clubs for the reasons that (*a*) said organizations have not bona fide eating places and (*b*) no room or rooms or places are designated on said premises for the serving or sale of beverages which are visible and accessible to the use and accommodation of the general public, and various appeals having been filed in the court on account of said refusals, the court now files this opinion covering and applying to all such applications.

The first question involved is whether or not a club in order to be issued a retailer's license under the Beverage License Law of 1933 is required to have a bona fide eating place. Regarding a "bona fide eating place", the act provides, in section 6, as follows:

"Retailer's Licenses. . . . the treasurer shall issue to a person who conducts a reputable hotel, or incorporated club, or a reputable, bona fide eating place where food is regularly and customarily prepared and sold . . ."

Under this section it is the opinion of the court that it was the legislature's intention to provide for the issuance of retailer's licenses to three separate and distinct classes, to wit, reputable hotels, incorporated clubs, and reputable bona fide eating places. The fact that the authorization for the issuance of such license to each of these classes is contained in the same paragraph does not, in our opinion, mean that each modifies the other, and if this were so, then "incorporated clubs" would modify the expression "reputable hotel", and, therefore, a retailer's license could only be issued to a reputable hotel which was a club and which conducted a reputable bona fide eating place. It is obvious that such conclusion is extremely far-fetched and unreasonable. We, therefore, conclude that a license may issue to an incorporated club regardless of whether or not it conducts an eating place in connection with its other activities.

It has been suggested that the expression "where food is regularly and customarily prepared and sold" might modify the expression "reputable hotel, or incorporated club," but inasmuch as these words follow the expression "reputable, bona fide eating place" and there is no comma or other indication of an intention to separate this modification so as to make it apply generally, it is our opinion that the said modification applies only to said places and to nothing else.

The court is finally persuaded that the term "retailer" does not necessarily mean an individual who conducts an eating place for the reason that section 2(e) of the act, which defines the term "retailer", reads as follows:

"The term 'retailer' means and includes persons licensed to engage in the retail sale of beverages where the consumption thereof is upon the premises of such vendor, with the privilege of selling beverages to be carried from the premises by the purchaser thereof only, however, in the original containers."

This definition is silent as to whether or not such retailer must conduct an eating place. If it were the intention of the legislature that only individuals who conduct eating places were entitled to retailers' licenses it certainly would have placed such a modification in its definition of the word "retailer".

For the reasons above stated the court is of the opinion that the term "retailer" does not imply that such retailer must maintain a bona fide eating place, as far as the interpretation of such term applies to incorporated clubs.

The second question presented relates to the issue whether or not such incorporated club is required to have a room or rooms or a place designated in said premises to serve or sell said beverages, visible and accessible to the use and accommodation of the general public.

It is the court's opinion that this matter is specifically covered by the act. Section 22 thereof reads as follows:

"Sales by Retailers. . . . No retailer shall . . . sell any beverages for consumption on the licensed premises except in a room or rooms or place on the licensed premises at all times visible and accessable to the use and accommodation of the general public. . . . A retailer licensed to sell beverages in a hotel or club house may, however, sell and deliver such beverages in any room of such hotel or clubhouse occupied by a bona fide registered guest or member entitled to purchase the same."

As above stated, the court is of the opinion that an "incorporated club" comes under the classification of hotel. We feel that section 22 above quoted specifically provides that such retailer may serve beverages in any room of such clubhouse occupied by a guest or member thereof. This leads to the natural conclusion that no room or rooms are required to be designated for the sale of such beverages under the act so far as the sale thereof by an incorporated club is concerned. Furthermore, this being the case, the requirement as to visibility and accessibility to the use and accommodation of the general public clearly does not apply to an incorporated club, since, if it did, it would be impossible for such beverage to be sold in any room of such club.

We, therefore, conclude that an incorporated club need not have any specific place designated for the sale of the beverage so long as it is served to bona fide members in rooms of the clubhouse. The court is further of the opinion that the restriction as to "visibility and accessibility" does not apply in clubs for the reason that paragraph (c) of section 19 of the act provides: "In the case of an incorporated club, the fee shall be twenty-five dollars in all cases."

If it was the intention of the legislature that such a club should be open and accessible to the general public for the purchase of beverages, the license fee fixed by the legislature would certainly have been the same as is fixed for other retailers in towns having the same population, but inasmuch as in our county the fee for the ordinary retailer is four times that which is charged for an incorporated club it is evident that the legislature must have had some reason for making such distinction. It is the court's opinion that the reason for the distinction was that the legislature recognized that an incorporated club would sell beverages only to its members, that its clientele would be limited to such membership and that it would not engage in the sale to the public generally, and that, therefore, the fee was fixed in the smaller amount. It is impossible to

ascribe any intention to the legislature other than the one above stated; otherwise, the law would put clubs in a position where they might compete with the retailer generally at a great advantage, since their expense in procuring a license would be much less than that of the ordinary retailer.

In coming to the conclusion that incorporated clubs are entitled to retailers' licenses under the Beverage License Law of 1933, we feel that we should give a liberal construction to the act. One of the purposes of the legislature in passing this act was to raise revenue from the licensing of the sale of such beverages, and in order to effectuate this purpose the act should be liberally construed.

Therefore, it having been made obvious to the court that the reasons advanced by the county treasurer for the refusal of the said licenses are without merit, it follows that the said licenses should be granted.

And now, June 10, 1933, the refusal of the county treasurer is overruled and a license granted as prayed for.

From Raymond E. Brown, Brookville, Pa.